## F. T. STROUD v. STATE.

No. A-10533.  March 13, 1946.

(167 P. 2d 80.)

Utterback & Utterback, of Durant, for plaintiff in error.

Randell S. Cobb, Atty. Gen., J. Walker Field, Asst. Atty. Gen., and Douglas Garrett, County Atty., Muskogee County, of Muskogee, for defendant error.

BAREFOOT, J. Defendant, F. T. Stroud, was charged in the county court of Muskogee county with the crime of leaving the scene of an accident and failing to stop and give information, as required by the laws of the State of Oklahoma. He was tried, convicted, and sentenced to pay a fine of $50 and costs, and has appealed.

Five assignments of error are presented:

"(1) Error in overruling defendant's demurrer to the evidence.

"(2) The verdict is not sustained by sufficient evidence.

"(3) The court erred in admitting hearsay evidence on behalf of the state.

"(4) The court erred in giving certain instructions to the jury.

"(5) Because of the above, it was error for the court to overrule defendant's motion of new trial."

This cause arose by reason of charges that defendant drove his automobile against the body of J. M. Coates, a

flagman for the M. K. & T. Railroad Company, on January 20, 1944, at the intersection of Okmulgee street and the "Katy" tracks, in the city of Muskogee. Mr. Coates was knocked down by an automobile about 7 o'clock in the evening as he was attempting to cross the street at the intersection.

The state introduced the testimony of J. M. Coates, the party who was struck; J. R. Rowden, another flagman for the railroad company, C. E. Thomas who was driving his car immediately behind that of the defendant, and three police officers.

Mr. Coates testified that he was on duty at the time he was struck; that he did not see the car before he was hit, and did not know who struck him. He was unable to identify either the car or the driver. He was knocked unconscious, suffered a cut on his head, and was skinned and bruised. He was taken to the hospital where he remained until the next afternoon, and was confined to his home for ten days thereafter.

Mr. Rowden testified that he was crossing the street with Mr. Coates at the time he was struck; that he was seven or eight feet in front of him and did not see the car until after it struck Mr. Coates. He did not get the license number, but a soldier who witnessed the accident took it down and gave it to him, and he in turn handed it to the police when they arrived at the scene. He heard the impact, looked around, and saw Mr. Coates rolling, and the car driving away. The car did not stop, and he could not identify it or the driver.

C. E. Thomas testified that on the night of the accident he drove up immediately behind the defendant; that traffic had been blocked by a switch engine; that he did not see defendant's car strike Mr. Coates, but saw

him fall, and learned that he had been struck by defendant's car. His daughter, who was in the car with him, wrote down the license number of the car, and witness followed several blocks before overtaking it. He stopped defendant, and told him that he had struck someone and that he had better go back. He testified that defendant answered, "Allright," and thanked him, but turned and drove off in another direction. Mr. Thomas followed him to his home, and then went into the home of a neighbor and telephoned for the police. He waited until the officers arrived, turned over to them the license number which his daughter had written down at the scene, told the officers all he knew about the occurrence, and went home.

Jim Leninger, a member of the Muskogee police, testified that he received a call about 7 o'clock, and with Houston Johnson went to Okmulgee avenue and the Katy tracks, where they found Mr. Coates, who had been knocked down by an automobile; that the license number of the car was given to him by Mr. Rowden, and acting upon this information an investigation was made and the defendant was later arrested, and charged, as above stated.

Aubrey Chambers, a police officer, testified that he was at the police station when a call came in reporting an accident at the railroad crossing; that he remained at the police station and a short time thereafter they received a call from a party later identified as C. E. Thomas; that witness and another officer answered the call and met Mr. Thomas, who furnished them with the license number of the car involved in the accident; that they found the car in the garage of defendant, and after investigation the defendant was arrested. He testified that the defendant stated he did not know he had hit anyone, but admitted

that someone had stopped him and told him that he had struck someone, and when asked why he did not go back to the scene of the accident after being told about it, he answered that he thought if he had done any damage they could look him up.

Defendant, testifying in his own behalf, gave a detailed statement of his route home, and testified that he did not strike anyone. He admitted that Mr. Thomas had stopped him, and that: "He said I hit a man, and I said I had not hit anyone, that I had been driving a car for 30 years and never hit anyone."

It is contended by defendant that hearsay testimony was introduced which deprived him of a fair trial. This contention is based upon the testimony of the witness Thomas, who testified that the license number of defendant's car was written down by his little girl, who was in the car with him at the time of the accident; and the testimony of the police officers that they were given the license number by Mr. Thomas; and by the other flagman at the scene of the accident.

This all happened at the time of the accident, and such spontaneous actions by eyewitnesses were admissible as a part of the res gestae. Under the circumstances here, it was the only way to identify the car and the one driving it. However, irrespective of this. we think the evidence of the witness Thomas alone was sufficient to justify the jury in finding the defendant guilty.

The contention that the evidence is insufficient to sustain the verdict and judgment cannot be upheld. It is at the best conflicting, and the evidence of the state, if believed by the jury, as the verdict indicates, was sufficient for them to reach the conclusion that the defendant was the driver of the car that struck and injured Coates.

The undisputed testimony was that the party who struck him did not stop and give the information as required by Oklahoma statutes. This statute, 47 O. S. 1941 § 104, is as follows:

"Whenever an automobile, motorcycle, or other motor vehicle whatsoever, regardless of the power by which the same may be propelled, or drawn, strikes any person or collides with any vehicle containing a person, the driver of, and all persons in control of such automobile, motor vehicle or other vehicle shall stop and such driver and person having or assuming authority of such driver shall further give to the occupants of such vehicle or person struck, if requested at the time of such striking or collision or immediately thereafter, the number of such automobile, motorcycle or motor vehicle, also the name of the owner thereof and his address, and the names of the passenger or passengers not exceeding five in each automobile or other vehicle, together with the address of each one thereof."

As to whether or not defendant knew at the time he had struck anyone was a question for the jury, under all the facts and circumstances. This conflict in the evidence was decided by the jury against the defendant, and should not be set aside by an appellate court.

The assignment of error with reference to the instructions of the court is that the court referred to the facts as if there had been a collision between two automobiles, while the evidence did not show a collision between two automobiles, but that a party was struck by an automobile while walking across the street. From reading the instructions, it seems that the court had used a "stock" instruction, and where the word "vehicle" appeared therein, it had been stricken out and the word "F. T. Coates" had been inserted; but the expression "containing any person and failed to stop and give the occupant of the automobile struck," etc., was left in the instruction.

130

We have examined the instructions as a whole, and there is no doubt but that they clearly conveyed the issue of "striking one" as provided by the statute. The statute hereinbefore quoted was set out in full in the instructions, and while the instruction complained of may not have been as well worded as it might have been, there can be no question, from a reading of all the instructions, that the defendant was not prejudiced in any way by the instructions given.

From a careful examination of the record, we are of the opinion that the judgment of the county court of Muskogee county should be affirmed. It is so ordered.

JONES, P. J., concurs. DOYLE, J., not participating.